# Kelly's Contested Election.

*Elections—Contested elections—Evidence—Bill of rights.*

Under article 8, section 10 of the constitution of Pennsylvania, a person cannot withhold his testimony in trials of contested elections on the ground that such testimony might criminate himself, since the bill of rights expressly directs that such testimony shall not afterwards be used against him in any judicial proceeding, except for perjury in giving such testimony.

*Elections—Contested elections—Refusal to testify—Open court—Contempt.*

Where a person refuses to answer questions propounded to him by examiners in a contested election, and appears in open court and makes answer to a rule to show cause why he should not be attached for contempt, and, in his answer, refuses to obey an order which had been made upon him to appear before the examiners, and answer the questions, the offense is committed in open court and he may be committed for contempt.

Argued April 12, 1899. Reargued Feb. 22, 1900. Appeal, No. 114, Jan. T., 1899, by John Gibbons, from order of Superior Court, Jan. T., 1900, No. 1, affirming order of Q. S. Lackawanna Co., Dec. T., 1898, No. 380, committing for contempt In re Contested Election of M. J. Kelly to the office of County Treasurer. Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ., on reargument. Affirmed.

Appeal from Superior Court. See Commonwealth v. Gibbons, 9 Pa. Superior Ct. 527.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was in affirming the order of the quarter sessions.

*I. H. Burns* and *H. W. Palmer*, with them *E. H. Connell*, for appellant.—It is an ancient principle of the law of evidence, that a witness shall not be compelled, in any proceeding, to make disclosures, or to give testimony which will tend to criminate him or subject him to fines, penalties or forfeitures: Rex v. Slaney, 5 Car. & P. 213 ; Cates v. Hardacre, 3 Taunt.

424; Maloney v. Bartley, 3 Campb. 210; Sir John Freind's Case, 13 State Trials, 16; Earl of Macclesfield's Case, 16 State Trials, 767; 1 Greenl. Ev. sec. 451; Whart. Crim. Ev. (9th ed.) sec. 463; Southard v. Rexford, 6 Cow. 255; People v. Mather, 4 Wend. 229; Lister v. Boker, 6 Blackf. 439; Counselman v. Hitchcock, 142 U. S. 547.

The privilege "nemo tenetur seipsum accusare" was not conferred by any constitution, but belonged to every citizen of the United States as a part of his inheritance of Anglo Saxon liberty.

The common law has always been in force in Pennsylvania: Morris v. Vanderen, 1 Dall. 64.

The fourteenth amendment is a limitation on the power of the states, forbidding the abridgment of any immunity or privilege enjoyed by citizens of the United States and among them of this essential principle of government:—Nemo tenetur seipsum accusare. The 10th section of the 8th article of the constitution of Pennsylvania is a violation of the fourteenth amendment, because it abridges this privilege without adequate immunity.

*R. H. Holgate,* with him *J. J. H. Hamilton,* for appellee, were not heard.

Opinion by Mr. Justice Dean, October 11, 1901:

In a contested election case in the quarter sessions over the office of county treasurer of Lackawanna county, the court appointed two examiners, W. R. Lewis and T. J. Dugan, to take testimony.

Gibbons, the appellant, was subpœnaed as a witness before them. He appeared and was sworn, but refused to answer certain questions which are set forth in the record touching the corrupt use of money by him to influence voters, on the ground that such answer would tend to criminate him. Thereupon the examiners certified the proceedings to the court, with copies of the questions and refusal of the witness. The court ruled that he should answer in full; he peremptorily refused the second time and the court attached him for contempt. On his application, Judge Smith of the Superior Court directed a writ of habeas corpus to issue, and pending hearing on a certiorari by that court, he was admitted to bail. On hearing,

the Superior Court affirmed the decree of the court below, and now Gibbons appeals to this court from that decree.

The weight of the appellant's argument is directed towards sustaining these three propositions:

1. Under the bill of rights of the constitution of Pennsylvania the defendant could not be required to give evidence against himself.

2. Under the constitution of the United States, no citizen can be required to give evidence against himself, anything in the constitution or laws of any state to the contrary notwithstanding.

3. If any contempt were committed, it was not in open court, or before the court, but before two examiners not sitting as a court and, therefore, the court of quarter sessions had no jurisdiction.

The Superior Court in opinion filed has so fully and completely answered the first two propositions of appellant's counsel, on both reason and authority, that it would be little more than repetition for us to discuss them at any length.

The accused was not directed to give evidence against himself.

Section 9 of the bill of rights declares that: " in criminal prosecutions, the accused cannot be compelled to give evidence against himself." Then in article 8, section 10, is this clause: " In trials of contested elections and in proceedings for the investigation of elections, no person shall be permitted to withhold his testimony, upon the ground that he may criminate himself, or subject him to public infamy, but such testimony shall not afterwards be used against him, in any judicial proceeding except for perjury in giving such testimony."

The argument that section 10 is fatally repugnant to section 9 of the bill of rights, and that the latter must prevail, is without force; assuming that the witness's answer would disclose the fact that he used money to purchase the votes of certain electors, his answer could not be used against him in any legal proceeding, therefore he would be subject to no penalty or fine involving deprivation of liberty or forfeiture of land or goods. The most that he could suffer would be that odium which attaches to moral turpitude. This is a penalty which every witness suffers who testifies to the truth in ordinary is-

sues tried every day in our courts, when he admits he was engaged in shady transactions, yet still not so flagrant as to be the subject of indictment in criminal courts. His statement subjects him to no higher penalty than moral degradation, which is not a subject of criminal prosecution.

The construction contended for by appellant would completely nullify section 10 and leave to corruption of the ballot complete immunity. It must be construed in harmony with the bill of rights, and thus the full effect be given to both sections, as the framers of them and the people intended. As is aptly said by the Superior Court, "Its (the constitution's) manifest purpose was to protect the purity of the ballot box, as fraud upon the ballot box is a crime against the nation." "Hence it was that the framers of the constitution sought to arrest the evil by embodying in the fundamental law the provision referred to. It is our duty to give it such a construction as will carry out the intent apparent on its face, and the object which the people had in adopting it: Com. v. Waters, 83 Pa. 107."

As to the second proposition, that under the constitution of the United States, no citizen can be compelled to give evidence against himself, it has been sufficiently answered by what has been said in discussing the first proposition.

As to the third proposition, while at first we were in some doubt, a more careful examination of the controlling facts ascertainable from the record, as well as more deliberate consideration of the law applicable to them, leads us to the conclusion, that the Superior Court was right also, in dissenting from this argument.

The refusal to answer was announced in open court. It will be noticed from the record, that when the examiners first certified the refusal to answer to the quarter sessions, the court directed him to appear before the examiners and make answer to the interrogatories then before it; he again refused; then a rule was awarded on appellant to appear before the court to show cause why he should not be attached for contempt. He then appeared in court with his counsel and read his written answers, refusing to respond to the questions.

It is argued the record does not show that under the act of

1836 the offense was in open court, therefore, a fine alone could be imposed.

This is a mistake ; he appeared in open court and made answer to the rule to show cause why he should not be attached for contempt, and, in his answer, refused to obey the order. This was not only technically, but actually a repetition of the offense in open court.

We do not decide, that where mere examiners are appointed by the court to perform duties wholly clerical, and the judge of the court does not sit with them, that they, in the performance of their duties are not to be deemed the court, when they certify contumacy or misconduct of a witness to the judge ; that question can be left open for future consideration. Here the witness committed the offense in open court, as well as before the court's examiners.

All the assignments of error are overruled, the decree is affirmed and appeal dismissed, at cost of appellant.